**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PUNGKUK EDM WIRE MANUFACTURING CO., LTD., <br><br>Plaintiff <br><br>v. <br><br>OPECMADE INC. AND OPEC ENGINEERING CO., LTD., <br><br>Defendants | Case No.: 2:18-CV-244-JRG <br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

## I. INTRODUCTION

This is a patent infringement case concerning a patent for electrical discharge machining ("EDM") wires used to cut hard materials such as steel under the control of a computer. *See* Doc. 1, Complaint for Patent Infringement and attached exhibits. Defendant OPEC Engineering Co., Ltd., doing business as OPECMADE INC. ("OPEC") hereby submits its motion for transfer of this action to the Northern District of Illinois under 28 U.S.C. 1404(a). Defendant OPEC respectfully submits that the circumstances of this case support transfer to the Northern District of Illinois under section 1404(a).

## II. BASIC FACTS

Both OPEC and Plaintiff Pungkuk Wire Manufacturing Co., Ltd. ("Pungkuk") in this case are corporations formed under the laws of the Republic of Korea.

There is a patent infringement case pending between the parties to this case in the Northern District of Illinois, designated as *Ki Chul Seong and OPEC v. PAPS USA, LLC and Pungkuk EDM Wire Manufacturing Co*.; USDC Northern District of Illinois, Eastern Division; 1:15-CV-02234 ("Prior Action"). The Prior Action concerns the same types of products as those involved in this case, namely zinc coated EDM wires. OPEC is a plaintiff in the Prior Action which has been pending since March 13, 2015. The EDM wire patents asserted in the Prior Action, owned by Ki Chul Seong, CEO of OPEC and a co-plaintiff in the Prior Action, were challenged on the grounds of invalidity by Pungkuk before the U.S. Patent and Trial Appeal Board in Inter Parte Review proceedings. OPEC's EDM wire patents survived those proceedings. A few of the claims of one of OPEC's three patents were conceded to be invalid by OPEC. Exhibit E (the last page).

### III. ARGUMENT

#### A. The Claims Against OPEC in this Action Could Have Been Filed in the Northern District of Illinois

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it <u>might have been brought</u>." [emphasis added].

Therefore, an issue in a § 1404(a) motion is whether the present lawsuit "might have been brought" in the proposed transferee district. *See In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009). A federal court where a patent infringement case "might have been brought" must have personal jurisdiction and proper venue over the defendant. *Id.*

OPEC has only four customers for its allegedly infringing EDM wire products in the United States: three in the Northern District of Illinois, near Chicago, and one in the Central District of California, near Los Angeles. *See* Seong Declaration, Exhibit A, at ¶ 2. Therefore, the Northern District of Illinois has personal jurisdiction over OPEC because the alleged infringements of the patent in this lawsuit occurred there. *See* Seong Declaration, Exhibit A, ¶ 2. Venue would also be proper in that District. *See* 28 U.S.C. §§ 1391(c)(3) and 1400(b).

In addition to the foregoing, Pungkuk could have brought its claim as a counterclaim in the pending action in the Northern District of Illinois but chose not to do so.

#### B. Under Section 1404(a), "Private Interest Factors" and "Public Interest Factors" Are Considered in Determining Whether Transfer is Proper

In determining a section 1404(a) motion to transfer, the Fifth Circuit applies "private" and "public" interest factors for determining whether to transfer a case as follows:

> "[T]he private interest factors include '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial easy, expeditious and inexpensive.' …
>
> The public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or] the application of foreign law."

*In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *see also In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

1. **Private Interest Factors**

    a. **The Ease of Access to Sources of Proof is Best Found in the Northern District of Illinois**

Many, if not most, of the alleged infringements in this case stem from the Northern District of Illinois where three of OPEC's total of four customers in the United States do business.  *See* Seong Declaration, Exhibit A, at ¶ 2.  Thus, testimonial evidence of alleged infringement and damages would be substantially more accessible in the proposed transferee court, the Northern District of Illinois, than any other District in the U.S., including the Eastern District of Texas.

Apart from documents in the Republic of Korea at the offices of OPEC concerning, for example, manufacturing, product development and international sales, the Northern District of

Illinois is where the vast majority of documents in the U.S. that provide evidence of OPEC's product sales, and thus potential damages, would be found. *Id, at* ¶4.

On the other hand, not one of OPEC's U.S. customers is in the Eastern District of Texas, or even remotely close to that district. *Id,* at ¶ 6. Nor is there any known evidence of infringement or alleged damages in the Eastern District of Texas. Even if there are some allegedly infringing sales in the Eastern District of Texas by OPEC's customers in the U.S., they are likely to be negligible compared to the U.S. as a whole in view of the number of federal districts in the U.S. In any event, the best "sources of proof" of even the sales in the Eastern District of Texas would be far more efficiently evidenced at the business locations of the customers of OPEC in Illinois (and less so in California where one of OPEC's U.S. customers resides).

### b. The Availability of Compulsory Process to Secure the Attendance of Witnesses is Most Expedient in the Northern District of Illinois

As noted above, the business locations of three out of a total of four U.S. customers of OPEC are in the Chicago metropolitan area. Seong Declaration, Exhibit A, at ¶2. A venue location in the Northern District of Illinois is well within the 100 mile service of process limit for compulsory appearance of individuals to testify as witnesses who work at OPEC's corporate customers. On the other hand, those key witnesses are approximately a thousand miles from the Eastern District of Texas.

### c. The Cost of the Attendance of Willing Witnesses is Lower in the Northern District of Illinois than in the Eastern District of Texas

Furthermore, two patent attorneys who prosecuted Pungkuk's patent in suit in the U.S. Patent and Trademark Office are located in Michigan, only 200 to 300 miles from the Northern

District of Illinois.  Park Declaration, Exhibit B, at ¶¶3-5.  On the other hand, those witnesses would be more than a thousand miles from the Eastern District of Texas.  Therefore, the cost of attendance of those witnesses at trial would be much lower, in both money and time, if the Northern District of Illinois is the site of trial in this case.

Additionally, in terms of airplane mileage, the cost of travel from Korea to the U.S., bringing the witnesses of both parties located in Korea, is slightly better in Chicago because flights from Seoul, Korea to the Northern District of Illinois are about 500 fewer air miles than such flights to the Eastern District of Texas. Exhibit G.

### d. Other Practical Problems that Make Trial Easier, More Expeditious and Less Expensive Also Point to the Northern District of Illinois as the Proper Forum

The U.S. federal courts involved, as well as the parties, would benefit from having this case transferred to the Northern District of Illinois.

First, Northern District of Illinois Judge Manish S. Shah is becoming familiar with EDM wire technology as the case brought by OPEC proceeds.  The three Seong patents in OPEC's Illinois patent infringement case have almost word-for-word identical specifications.  *See* Exhibits C through E.  One of those Seong patents (U.S. Patent No. 6,306,523 B1, Exhibit C) was cited by the Patent Office examiner in the application for U.S. Patent No. 7,723,635 B2, the patent in suit alleged to be infringed in this case.  *See* Exhibit F.

Moreover, as illustrated by example below, the claims of the Seong patents in the Illinois action and the Shin patent (patent in suit) in this case are technologically and structurally similar in many respects.

Claim 14 of the Seong patent designated as U.S. Patent No. 6,306,523 B1, Exhibit C, and that is a patent at issue in the Illinois case, includes the following limitations:

14. An electrode wire for use in electrical discharge machining comprising:

a core wire …;

an alloy layer formed on the core wire; and

a coating layer on the alloy layer … wherein cracks are formed in the alloy layer and the coating layer ….

Claim 1 of U.S. Patent No. 7,723,635 B2, Exhibit F, that is the subject of this action has the following limitations:

1. An electrode wire for electric discharge machining comprising:

a core;

a covering layer formed on a periphery of the core; and grains formed on the covering layer …

wherein the grains are spaced from one another on a periphery of the covering layer and the covering layer is formed between the grains to surround the grains.

In view of the above claims in the Illinois case and this case, the technology issues are similar in the two cases.  Therefore, factually, the accumulated experience of District Court in the OPEC cases in the Northern District of Illinois enhances the efficiency of a trial in that district.  Moreover, presenting a case with very similar technology with the patent in this case before a single court would be more efficient for the judicial system as a whole.

### 2. Public Interest Factors

#### a. The administrative difficulties flowing from court congestion

The administrative difficulties of proceeding in the Northern District of Illinois are reduced for the reasons discussed above in the immediately preceding section of this brief. The added burden would be less in the Northern District of Illinois than in this District, in view of the pending lawsuit involving OPEC's patents in that court.

### b. The local interest in having localized interests decided at home

The local interest in this case also favors transfer. Concerning the U.S. federal courts, the local interest is clearly higher in the Northern District of Illinois because of the three companies in that district who are customers of OPEC (out of only four such customers in the U.S.) *See* Seong Declaration, Exhibit A, at ¶ 2. OPEC has no customers in the Eastern District of Texas.

As for Pungkuk's customers, OPEC does not have any information about that issue.

### c. The familiarity of the forum with the law that will govern the case

Since the IPR cases against OPEC's three patents proceeded in the U.S. Patent and Trial Appeal Board, not before Judge Shah, and the Illinois case is still in the discovery phase, addressing the application of the law to the Northern District of Illinois case has not been required as yet.

### d. The avoidance of unnecessary problems of conflicts of laws or the application of foreign law

OPEC is not aware of any conflicts of law or foreign law issues in either of the pending cases.

### C. The "Private Interest Factors" and "Public Interest Factors" Support the Northern District of Illinois as the Proper Forum for this Case

In view of the foregoing, OPEC respectfully moves this Court to transfer this case to the Northern District of Illinois.

DATED: August 9, 2018                                 Respectfully Submitted,

*/s/John K Park by Trey Yarbrough w/permission*
John K. Park (Calif. State Bar No. 175212)
Mark L. Sutton (Calif. State Bar No. 120255)
Park Law Firm
3255 Wilshire Blvd., Suite 1110
Los Angeles, CA 90010
Tel: 213-389-3777
park@parklaw.com
mlsutton@parklaw.com

Trey Yarbrough
State Bar No. 22133500
YARBROUGH WILCOX, PLLC
100 E. Ferguson, Suite 1015
Tyler, Texas 75702
(903) 595-3111
(903) 595-0191 – Fax #
trey@yw-lawfirm.com

*Attorneys for Defendant*
OPEC Engineering Co. LTD, d/b/a/ OPECMADE, Inc. ("OPEC")

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 9, 2018. All other counsel not deemed to have consented to service in such manner will be served via facsimile transmission and/or first class mail.

*/s/ Trey Yarbrough*
Trey Yarbrough

## **CERTIFICATE OF CONFERENCE**

I, John K. Park, an attorney for Defendant OPEC Engineering Co., LTD, doing business as OPECMADE Inc. ("OPEC"), certify that Counsel has complied with the meet and confer requirement in LOCAL RULE CV-7(h).  As result, this motion is opposed.

The parties met and conferred by telephone on August 7, 2018.  At the teleconference were Ms. Kalai Wineland, attorney for Plaintiff Pungkuk EDM Wire Manufacturing Co., LTD, and John Park, representing Defendant OPEC.  No agreement was reached and discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ John K. Park*
John K. Park